UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                        **DECISION AND ORDER**

MICHAEL BERND KREIDER                      06-CR-00251-S

                Defendant.

## I. INTRODUCTION

Currently before the Court is Defendant's motion *in limine* to bar the government from making various factual and legal arguments and from offering various statements, testimony and documents in evidence. The Court distributed a draft decision to counsel prior to discussion and oral argument. This Decision and Order takes into consideration the parties written submissions and the additional arguments and concessions made at argument on September 5, 2006.

## II. BACKGROUND

On July 21, 2006, Defendant Michael Bernd Kreider was charged in a criminal complaint, in case number 06-MJ-2157, with having been found on July 20, 2006 at Peace Bridge Port-of-Entry after having been previously deported and without having received permission to reenter the United States, in violation of 8 U.S.C. § 1326. On August 3, 2006, United States Magistrate Judge Hugh B. Scott dismissed the criminal complaint in 06-MJ-2157, without prejudice, holding that the allegations in the complaint and supporting affidavit were insufficient to state a charge under either the "found in" or "enters" language of section 1326(a).

On August 9, 2006, the Grand Jury for the Western District of New York issued a two-count Indictment against Defendant Kreider, which is the basis for the present case number 06-CR-00251. Count 1 charges Defendant, an alien who previously had been deported and removed from the United States, with having entered, attempted to enter and been found in the United States on or about July 20, 2006, without obtaining consent to reapply for readmission. Count 2 charges that Defendant, an alien who previously had been deported and removed from the United States, entered the United States sometime after August 16, 2002, without obtaining consent to reapply for readmission. These charges arise from the following facts.

On July 20, 2006, Defendant was on a bus traveling from the United States to Canada via the Peace Bridge. (DH[1] 11, 14, 15, 18.) Canadian Immigration called U.S. Customs and Border Inspection to verify whether Defendant was a permanent resident of the U.S. as he stated to a Canadian Immigration officer. (DH 11.) After U.S. officials advised that Defendant was not a permanent U.S. resident as claimed, he was denied admission to Canada and the bus in which he was traveling was sent back to the U.S. side of the Peace Bridge. (DH 11, 14, 15, 18.) Once there, Defendant was interviewed by William Schoenrock, a U.S. Customs and Border Protection enforcement officer. (DH 11, 20.) Defendant stated that he had entered the United States in July of 2003, hidden in the trunk of his wife's vehicle. (DH 20.)

### III.  DISCUSSION

The statute Defendant is charged with violating provides, in relevant part, that:

---

[1]  Citations to "DH __" refer to the transcript of the detention hearing before Judge Scott on July 28, 2006. (Docket No. 19, Ex. N.)

> [A]ny alien who—
> (1) has been denied admission, excluded, deported or removed or has departed the United States while an order of exclusion, deportation or removal is outstanding, and thereafter
> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission . . . . shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a).

**A.   Defendant's Motion to Bar the Government from Arguing that Defendant was "Found In" the United States or that he Never Left the United States on July 20, 2006.**

Defendant argues it is black letter law that a person cannot be "found in" the United States at a port-of-entry for purposes of 8 U.S.C. § 1326(a).  The Government contends that the circumstances of this case are factually distinguished from those relied on by Defendant and that the Government should not be precluded from arguing a violation of section 1326(a) based on the "found in" provision.  I find that the facts as presented on this motion are sufficiently distinguishable from those in Defendant's cited cases to permit the Government to offer proof of a "found in" violation.

> An alien commits the offense of being "found in" the United States if he enters the country unlawfully after making a surreptitious border crossing that conceals his presence or enters through a recognized port by means of specious documentation that conceals the illegality of his presence.  The commission of the offense is not complete, however, until the authorities both discover the illegal alien in the United States and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence.

United States v. Acevedo, 229 F.3d 350, 355 (2d Cir. 2000) (internal citations and punctuation omitted).

In challenging the legal sufficiency of the "found in" aspect of the indictment, Defendant first relies on a line of cases involving voluntary presentment at a United States port-of-entry. Those cases stand for the proposition that a person cannot be "found in" or "discovered in" a place where he presents himself but has not yet gained entry. For example, in United States v. Canals-Jimenez, 943 F.2d 1284 (11th Cir. 1991), the Circuit Court reversed the conviction of a defendant charged with being "found in" the United States where he stepped off a flight from the Dominican Republic to Miami en route to Canada, voluntarily proceeded to an INS station, presented a passport containing forged information, and was detained at immigration. The Court cited the long-established principle that "the detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically within the United States." *Id*. at 1288 (citation omitted). *See also*, United States v. Angeles-Mascote, 206 F.3d 529 (5th Cir. 2000) (defendant was not "found in" the United States where he flew from Mexico to Texas, voluntarily approached the port-of-entry, and presented immigration officials with documentation); United States v. Zavala-Mendez, 411 F.3d 1116 (9th Cir. 2005) (defendant, who traveled by car from the Yukon Territory into Alaska, presented himself at the border station and untruthfully stated that he had a green card, was not "found in" the United States for purposes of 8 U.S.C. § 1326(a); a person cannot be "found" or "discovered" when he voluntarily presents himself in the manner designated by the United States Government).

The foregoing cases each involved a defendant who traveled from within another country and voluntarily presented at a United States border. None were alleged to have

started their travels within the United States and/or to have gained unlawful entry here following their deportation but prior to their discovery.

Here, Defendant Kreider is alleged to have unlawfully entered the United States and to have been discovered sometime thereafter when his attempt to enter Canada from the United States was rebuffed and he was required to return from whence he came. At least one Circuit Court has considered such distinguishing facts significant. In holding that Zavala was not "found in" the United States, the Ninth Circuit expressly noted that during the time between the defendant's deportation and his presentation at the Alaska border, the defendant had "never evaded detection and had no period of time in the United States beyond the border station." 411 F.3d at 1121.

I also find the circumstances alleged here distinguishable from United States v. Leto, 991 F. Supp. 684 (D. Vt. 1997), a venue case cited by Defendant. Leto traveled through Vermont, was detained by Canadian authorities and was "apprehended for this violation [of 8 U.S.C. § 1326(a)] in Canada" when INS agents crossed the international boundary to take him into custody. *Id*. at 685-686. In holding that venue did not exist in Vermont, the District Court expressly noted that "[t]he government does not argue that Leto was 'found in' the United States when he was returned here in custody following his rejection at the Canadian border." *Id*. at 686.

As for the second prong of his challenge, Defendant appears to argue that a deported alien who illegally reenters the United States and then voluntarily, but unsuccessfully, attempts to enter another country cannot be "found in" the United States. Defendant urges that the Government should be precluded from arguing that Defendant

did not leave the United States on July 20, 2006, and argues that his having stepped foot on another country's soil nullifies the "found in" aspect of Count one of the indictment. Defendant cites to no statutory language or to any case in support of his argument that an unsuccessful attempt to leave the United States after having unlawfully entered breaks the "found in" chain. Nor does this Court's reading of the "found in" cases support such a conclusion. For example, in Salazar-Robles, 207 F.3d 648 (9th Cir.), *cert. denied*, 531 U.S. 859, 121 S. Ct. 145, 148 L. Ed. 2d 96 (2000), the defendant, who was "found in" a state prison, argued that he could not be "found in" a place he did not voluntarily put himself and where he was prevented from leaving the United States. The Ninth Circuit rejected that argument, explaining that "'being found' is an element of the offense; but it is a passive state, not requiring proof of a voluntary act. The voluntary element consisted in [the defendant's] return" after deportation. *Id*. at 650. The Court reasoned that intent to be in the United States when located is unnecessary. *Id*. (citation omitted); *see also*, Leto, 991 F. Supp. at 686 (noting the Ninth Circuit's holding that an alien who has been deported and voluntarily reenters unlawfully has the requisite intent for being "found in" the U.S. even if, at the time he is located, he wishes he were elsewhere, but distinguishing Leto's case on the ground that the INS apprehended him in Canada).

Accordingly, Part I of Defendant's motion is denied in its entirety.

**B.    Defendant's Motion to Bar the Government from Arguing that Defendant Entered the United States at the Peace Bridge on July 20, 2006.**

The indictment in this case states that Defendant was apprehended in the Western District of New York on July 20, 2006 (Count two), on or about the date on which he entered, attempted to enter and was found in the United States at the Peace Bridge port-

6

of-entry (Count one).  Defendant argues that the indictment makes clear that he did not actually enter the United States on July 20, 2006.  This Court agrees.

If Defendant was found and apprehended at the Peace Bridge as charged, he could not have gained actual entry on July 20, 2006[2], which requires "both physical presence in the country as well as freedom from official restraint."  Angeles-Mascote, 206 F.3d at 531.

The Government concedes that the "entered" and "found in" charges are mutually exclusive, but urges that if the Court determines the "found in" aspect of Count one is a legal or factual impossibility, it should be permitted to offer proof on the "entered" aspect of the charge.  However, the Government does not articulate any legal or factual basis for the "entered" aspect of Count one in response to Defendant's motion.

Having determined that the Government can proceed with proof on a "found in" theory and finding the indictment insufficient to support an "entered" theory, Part II of Defendant's motion is granted.

**C.    Defendant's Motion to Bar the Government from Arguing Multiple Theories on Count One.**

Defendant contends that Count one "presents a classically duplicitous count because it charges three different crimes."  Defendant fails to acknowledge the distinction between charging two distinct crimes in a single count and charging that a single offense was committed by more than one means.

The United States Supreme Court has stated that its "cases reflect a long-established rule of the criminal law that an indictment need not specify which overt act, among several named, was the means by which a crime was committed. . . .  This

---

[2] This, of course, has no effect on Count two, which alleges an unlawful entry on an earlier date.

fundamental proposition is embodied in Federal Rule of Criminal Procedure 7(c)(1), which provides that 'it may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.' We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone." Schad v. Arizona, 501 U.S. 624, 631, 111 2491, 115 555 (1991). Count one alleges a single violation of 8 U.S.C. § 1326(a), regardless of the mean[s] by which it was committed.[3] *See generally*, Acevedo, 229 F.3d at 354 (defendant charged in one count with illegally entering, attempting to enter and being found in); United States v. Whittaker, 999 F.2d 38, 41 (2d Cir. 1993) (information charged illegal entry, attempt to enter and found in). Accordingly, Part III of Defendant's motion is denied.

Nevertheless, the Government must be prepared to state at trial whether it will proceed on an "attempted entry" theory, a "found in" theory, or both, and must provide the Court notice of its intent, along with proposed jury instructions and a proposed special verdict form consistent with its intended proof, no later than September 7, 2006, at 12:00 p.m.[4]

---

[3] While this Court agrees that these means typically would be mutually exclusive, under the circumstances alleged here, the Government may attempt to prove that Defendant attempted entry on July 20, 2006 and was "found in" the United States on that same date relative to an earlier unlawful entry.

[4] This Court has not yet received the Government's proposed Special Verdict Form, which was due on August 21, 2006.

**D.    Defendant's Motion that the Government be Barred from Offering Defendant's Statements into Evidence under the *Corpus Delicti* Rule, Miranda and the Sixth Amendment.**

Part IV of Defendant's motion seeks suppression of statements made on July 20, 2006 and August 3, 2006 under the *corpus delecti*/corroboration rule.  In Part V, he seeks suppression of the August 3, 2006 statements based on Miranda and Sixth Amendment violations.

**1.    Corroboration**

Defendant appears to concede that the Government has identified independent evidence to corroborate Defendant's unlawful entry into the United States as a general proposition.  (Docket No. 21, 16-17.)  In light of that concession, this Court declines to suppress Defendant's July 20, 2006 statement that he entered the United States sometime in the summer of 2003 in the trunk of his wife's car, and Part IV of Defendant's motion is denied.  Defendant's further argument relative to venue is discussed at Point E below.

**2.    Miranda and Sixth Amendment Violations**

Defendant contends that he was subjected to a custodial interrogation on August 3, 2006 without the provision of Miranda warnings and at a time when Defendant was represented by counsel.  The Government has not responded to the allegations and apparently concedes these defects.  Therefore, Part V of Defendant's motion is granted and the August 3, 2006 statements are inadmissible at trial.

**E.    Defendant's Motion that the Government be Barred from Arguing it Does Not Have to Prove Venue**

The Court finds this aspect of Defendant's motion curious, to say the least, given that the Government has proposed a venue jury instruction acknowledging that it must

9

prove venue. Defendant's real argument, it seems, relates to where venue appropriately lies for violations of 8 U.S.C. § 1326.

Defendant contends that venue for a charge of illegal entry (Count two) in violation of 8 U.S.C. § 1326(a) can lie only in the judicial district in which the unlawful, undetected entry occurred. At the final pretrial conference on September 5, 2006, the Government conceded that under United States v. Hernandez, 189 F.3d 785 (9th Cir. 1999), *cert. denied*, 529 U.S. 1028, 120 S. Ct. 1441, 146 L. Ed. 2d 329 (2000), it has the burden of proving, by a preponderance of evidence, that the unlawful entry charged in Count two took place in the Western District of New York. The Government further represented that it is prepared to offer proof that the charge is properly venued here.

Accordingly, Part VI of Defendant's motion, seeking to preclude the Government from making an argument it has not advanced is denied. To the extent Defendant is objecting to use of the Government's proposed venue jury charge in connection with Count two, that objection has been resolved by the Government's concession and will be addressed in the Court's jury charge.

**F.    Defendant's Motions to Bar the Government from Introducing Certain Evidence at Trial**

At Parts VII, VIII, X and XI of its motion, Defendant seeks to bar the government from introducing Fed. R. Evid. 404(b) material, bar admission of Defendant's prior misdemeanor conviction on cross-examination, bar inadmissible hearsay and trial and bar prejudicial evidence at trial. Defendant concedes in its motion that it has no basis to believe that the Government intends to introduce the evidence it seeks to preclude and/or that the motion is anticipatory and fails to identify the exhibits that are purportedly

inadmissible. Thus, Parts VII, VIII, X and XI of Defendant's motion are premature and are denied without prejudice.

**G.     Defendant's Motion to Preclude Expert Testimony**

On August 21, 2006, the Government included on its witness list Captain Michael Melton, a fingerprint examiner with the Amherst Police Department, who is expected to testify as to his comparison of fingerprint impressions taken of Defendant on August 16, 2002 and July 20, 2006. Defendant objects to this witness on the ground that he was not disclosed as an expert and no expert report, resume and the like had been received as of August 31, 2006. In its response, the Government states that it has requested a copy of Capt. Melton's resume and will provide it upon receipt.

Rule 702 permits a witness to testify as an expert only where the court determines that "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." FED.R.EVID. 702. Fingerprint analysis is a proper subject of expert testimony because it aids the jury in understanding the evidence. *See*, United States v. Sheffer, 523 U.S. 303, 313, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998). Defendant has offered no reason, other that the absence of Melton's resume, for precluding this testimony. I decline to preemptively deny the Government the opportunity to present expert testimony regarding fingerprint analysis. However, if the Government intends to present Capt. Melton as an expert, it must disclose his qualifications by September 8, 2006, or Melton will be permitted to testify only as a fact witness. In the meantime, Part IX of Defendant's motion is denied without prejudice.

**H.      Defendant's Request that the Court take Judicial Notice of Geographic Boundary**

Defendant requests that this Court take notice that the international boundary between the United States and Canada runs along the midpoint of the Niagara River and is clearly marked on the Peace Bridge.  The Government did not object to Defendant's described location of the international boundary in its written submissions and further represented at oral argument that this fact can be established by stipulation pursuant to Rule 49.3 of the Local Rules of Criminal Procedure for the Western District of New York. Therefore, Part XII of Defendant's motion is denied without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion *in Limine* (Docket No. 16) is Granted as to Parts II and V, Denied as to Parts I, III, IV and VI, and Denied without prejudice as to Parts VII - XII.


          SO ORDERED

Dated:   September 6, 2006
             Buffalo, New York

                                                            /s/William M. Skretny
                                                            WILLIAM M. SKRETNY
                                                            United States District Judge